Matthew G. Monforton  (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
E-mail:      matthewmonforton@yahoo.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| ROYAL DAVIS, GARY MARBUT, TOM HARSCH, TERESA HARSCH, <br><br> Plaintiffs, <br> v. <br><br> COREY STAPLETON, in his official capacity as Montana Secretary of State, <br><br> Defendant. | Case No. _____ <br><br> **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## **PRELIMINARY STATEMENT**

1.    On March 6, 2020, Montana Secretary of State Corey Stapleton declared a

ballot qualification petition submitted to election officials had garnered sufficient

signatures under Montana law to qualify the Green Party for the ballot.

2.    Shortly thereafter, several candidates filed for Green Party nominations,

including Plaintiff Royal Davis (who filed as a candidate for Montana Attorney

General) and Plaintiff Gary Marbut (who filed for a seat in the Montana Senate).

3.      The State conducted an all-mail primary election and mailed ballots to the

electors on May 8, 2020.

4.      Plaintiffs Tom Harsch and Teresa Harsch, along with approximately 800

other Montana voters, marked Green Party ballots and timely returned them to

election officials.

5.      On June 1, 2020, *the day before the primary election*, and weeks after most

Green Party voters had mailed in their ballots, the Montana Democratic Party filed

suit in state court to invalidate the Green Party qualification petition and remove

the Green Party from the ballot.

6.      In an order issued August 7, 2020, the state court did not find any defects in

the wording of the petition or reasons that would have disqualified any of the

signers from signing the petition.

7.      Rather, the state court determined that several petition signers had become

dismayed upon learning that Republicans had funded signature-gathering efforts.

8.      The state court further ruled that, by late May 2020, enough of these signers

had requested withdrawal of their signatures that the number of remaining signers

had fallen below the legal threshold needed to qualify a party for the ballot.

9.      So on August 7, 2020, nearly three months after the Harschs and other

Montana voters lawfully cast Green Party ballots in May, and nearly five months

after Secretary Stapleton declared in March that the Green Party was ballot-

qualified, the state court ruled that the Secretary Stapleton is "enjoined from implementing or giving any effect to the [Green Party's] Petition."

10.     A denial of substantive due process occurs if an election is "conducted in a manner that is fundamentally unfair." *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998).

11.     An election is fundamentally unfair and violates substantive due process if two elements are present:

> (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and
>
> (2) significant disenfranchisement that results from a change in the election procedures.

*Bennett*, 140 F.3d at 1226-27, citing *Griffin v. Burns*, 570 F.2d 1065, 1078-79 (1st Cir. 1978).

12.     The buyer's remorse suffered by some of the Green Party petition signers well after the Party qualified for the ballot -- and well after many of the Green Party voters had cast ballots -- did not justify the state court's cavalier disenfranchisement of Plaintiffs and nearly 800 other Green voters months after they had lawfully cast ballots in Montana's primary election.

13.     Montana law requires state election officials to certify for the general election ballot the names and party designations of candidates no later than ***August 20, 2020.*** Mont. Code Ann. § 13-12-201(1)

3

14.     Without immediate relief from this Court, Plaintiffs and approximately 800 other Green Party voters will suffer irreparable injury to their constitutional rights, including disenfranchisement, despite having lawfully cast ballots during Montana's primary election.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C. §1983, and the Fourteenth Amendment to the United States Constitution.

16.     Because this action arises under 42 U.S.C. §1983, this Court has jurisdiction notwithstanding the general prohibition contained in the Anti-Injunction Act, 28 U.S.C. § 2283,[1] against federal injunctions staying proceedings in state courts. *Mitchum v. Foster*, 407 U.S. 225, 243 (1972).

17.     Defendant Stapleton resides in the Helena Division of the Court and, therefore, venue for this action properly lies in the Helena Division.

## PARTIES

18.     Plaintiff Royal Davis is now and has been for over 40 years a resident of Lewis and Clark County, Montana.

---

[1] The Anti-Injunction Act states as follows:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283

19.　Plaintiff Davis meets all of the legal requirements to serve as Attorney General of Montana.

20.　Plaintiff Gary Marbut is a resident of Missoula County, Montana, and meets all of the legal requirements to serve in the Montana Senate.

21.　Plaintiff Tom Harsch is a resident of Yellowstone County, Montana, and at all times pertinent to this lawsuit has been registered to vote in Yellowstone County.

22.　Plaintiff Teresa Harsch is a resident of Yellowstone County, Montana and at all times pertinent to this lawsuit has been registered to vote in Yellowstone County.

23.　Defendant Corey Stapleton was elected Secretary of State in November 2016 and, since that time, has resided in Lewis and Clark County, Montana.

24.　Secretary Stapleton is sued in his official capacity only.

## STATEMENT OF FACTS

### A. Rules For Political Parties to Qualify for Montana Primary Elections

25.　Montana law provides two methods by which a political party can qualify for the ballot in a primary election.

26.　First, a political party will appear on the primary ballot if it had a candidate for statewide office in either of the prior two general elections who received at

least 5% of the total vote received by the successful candidate for governor. Mont.
Code Ann. § 13-10-601(1).

27.     Under this rule, the Democratic Party, the Republican Party, and the
Libertarian Party are ballot-qualified parties.

28.     Parties that are not ballot-qualified under Mont. Code Ann. § 13-10-601(1)
may seek qualification under Mont. Code Ann. § 13-10-601(2)(b) by submitting to
the Secretary of State a petition signed by a number of registered voters equal to
5% or more of the total votes cast for the successful candidate for governor at the
last general election or 5,000 electors, whichever is less.

29.     This number must include registered voters in at least 34 of Montana's 100
legislative districts equal to 5% or more of the total votes cast for the successful
candidate for governor at the last general election in those districts or 150 electors
in those districts, whichever is less.  Mont. Code Ann. § 13-10-601(2)(b).

30.     The deadline to submit new political party qualification petitions to county
election administrators was March 2, 2020.  Mont. Code Ann. § 13-10-601(2)(c).

## B. Qualification of the Green Party For the 2020 Primary and Casting of Green Party Ballots By Voters

31.     Sometime in January or February 2020, registered Montana voters began
signing a petition to qualify the Green Party for the 2020 primary election.

32.     In accordance with Montana law, petition signatures and affidavits of circulation were timely submitted to county election administrators on or before the deadline of March 2, 2020.

33.     On March 6, 2020, Secretary Stapleton publicly announced that the Green Party had submitted sufficient signatures to qualify for the ballot.

34.     During the following week, several Green Party candidates timely filed nomination papers with the Secretary.

35.     One candidate was Wendie Fredrickson, who filed as a Green Party candidate for United States Senator.

36.     Fredrickson paid a candidate filing fee of $1,740.00.

37.     Plaintiff Royal Davis filed as a Green Party candidate for Montana Attorney General.

38.     Davis paid a candidate filing fee of $1,410.23.

39.     Davis has been licensed to practice law in Montana since 1996.

40.     Davis had spent decades supporting Democratic candidates for governor prior to filing as a Green Party candidate.

41.     These efforts included serving twice as the Lewis and Clark County Campaign Coordinator for former Democratic Governor Tom Judge.

42.     Davis was also involved in the campaigns of other Democratic gubernatorial candidates such as Mike McGrath and Brian Schweitzer.

43.     Davis has collected wind generators since he was in high school and also owns solar panels.

44.     Davis heats his home and mountain cabin exclusively with renewable resources.

45.     Plaintiff Gary Marbut filed as a Green Party candidate for the Montana Senate in a Missoula-area senate district.

46.     Marbut paid a candidate filing fee of $15.

47.     Marbut has in prior election cycles filed for both Democratic and Republican nominations for various offices.

48.     Prior to 2020, Marbut's most recent campaign was as an Independent candidate for Montana House District 94 in 2014.

49.     Marbut believes the Green Party aligns with his ecological ideals.

50.     Marbut has long been active in conservation efforts, starting with his appointment in the 1980s to the Governor's Advisory Council for Residential Energy Conservation.

51.     Marbut lives in a home he built 40 years ago that receives thermal solar, electrical solar, and passive solar energy, and is highly insulated and partially earth-sheltered, thereby requiring him to spend only about $10 each year for electric backup heat.

52.    Marbut has been an organic gardener for 40 years and currently cultivates approximately ½ acre of land in order to produce locally grown food.

## C. Casting of Green Party Ballots By Montana Voters

53.    The Secretary provides party ballots to every voter during a Montana primary election – the voter then casts votes on only one of the party ballots and discards the others.  Mont. Code Ann. § 13-10-301.

54.    Governor Steve Bullock issued a directive on March 25, 2020, permitting Montana counties to conduct mail-ballot elections in response to the state of emergency created by the outbreak of COVID-19 Novel Coronavirus.

55.    In response to Governor Bullock's directive, every Montana county implemented a mail-ballot election.

56.    Election officials mailed ballots to Montana voters on May 8, 2020.

57.    The mailings to each voter included four ballots representing each of the four ballot-qualified parties:  Democratic, Republican, Libertarian, and Green.

58.    A sample ballot for the Green Party can be found on the Secretary's website at https://app.mt.gov/voterinfo/ballot/1664CG.pdf and is attached as **Exhibit 1**.

59.    Election officials included an instruction sheet in the mailings sent to each voter as well as a return signature envelope.

60.     A copy of the instruction sheet can be found on the Secretary's website at

https://sosmt.gov/wp-content/uploads/attachments/Absentee-Voting-

Instructions.pdf?dt=1519325225636 and is attached as **Exhibit 2**.

61.     The instruction sheet directed voters to "Vote only one party ballot."

62.     Consistent with Montana law, the instruction sheet further directed voters to

"Place party ballot that you VOTED in the SECRECY ENVELOPE and seal the

envelope" as well as "Discard and DO NOT return your UNVOTED party

ballot(s)." (Capitalizations in original).

63.     The instruction sheet further advised voters that the "Postal Service

recommends mail at least one week before the election."

64.     It also included this instruction:

> **Ballots must be <u>received</u> at the election office by 8 p.m. on
> Election Day, June 2, 2020**. A postmark is not accepted. If you mail
> your ballot make sure there is enough time for it to reach your
> election office.

(Emphasis in original).

65.     Plaintiffs Tom Harsch and Teresa Harsch received the Secretary's election

mailing shortly after May 8, 2020.

66.     The Harschs each chose a Green Party ballot, marked their selection of

Wendie Fredrickson for U.S. Senate as well as Green candidates for other offices,

promptly mailed their Green ballots in the return signature envelopes, and

discarded the other party ballots.

10

67.     After the primary election on June 2, 2020, Fredrickson received 504 votes, compared to 255 votes for her opponent, and therefore prevailed in the primary.

68.     Plaintiff Royal Davis, who was the only candidate seeking the Green Party's nomination for Attorney General, received 752 votes and is therefore the Green Party nominee for Attorney General.

69.     Plaintiff Gary Marbut, who was the only candidate seeking the Green Party's nomination for Montana Senate District 47, received 14 votes and is therefore the Green Party nominee for that district.

70.     Plaintiffs Tom Harsch and Teresa Harsch intend to vote for Green Party candidates in the general election in November 2020.

## D. **The Democratic Party's Suit Challenging the Green Party Filed the Day Before the Primary Election**

71.     On June 1, 2020 -- one day before the primary election -- the Montana Democratic Party filed suit in the Montana First Judicial District Court seeking to invalidate the Green Party's ballot-qualification petition and enjoin Secretary Stapleton from implementing it.

72.     A copy of the complaint filed in *Montana Democratic Party, et al. v. State of Montana by and through its Secretary of State Corey Stapleton*, Cause No. DDV-2020-856, is attached as **Exhibit 3.**

73.   The lawsuit also named as plaintiffs three persons who had signed the petition to qualify the Green Party for the primary election.

74.   The state court plaintiffs did not name any Green Party candidates or voters as parties and did not serve copies of the complaint on any of them.

75.   Plaintiff Marbut filed a *pro se* motion to intervene in the state court matter on July 17, 2020.

76.   The state court denied the motion on August 6, 2020.

77.   The state court issued an order the next day granting the Democratic Party's motion for summary judgment and ordered that Secretary Stapleton and his agents "are enjoined from implementing or giving any effect to the [Green Party's] Petition." **Exhibit 4** at 49.

78.   The order stated that, in the months after Secretary Stapleton declared in March that the Green Party had qualified for primary election, the Montana Democratic Party "mobilized to inform signers that an unknown entity unaffiliated with the Montana Green Party – eventually revealed to be the MTGOP – was behind the petition, and assisted signers who wanted to withdraw their names from the petition." **Exhibit 4**, ¶ 69.

79.   The state court ruled that several signers became dismayed upon hearing that Republicans had provided funding to signature-gatherers and that "[b]y late May,

over 500 signers of the petition…had submitted requests to withdraw their signature." **Exhibit 4, ¶** 92.

80.    The court determined that, after accounting for the withdrawal requests, the number of remaining petition signatures satisfied the legal threshold in 33 Montana legislative districts, not 34 as required under Mont. Code Ann. § 13-10-601(2)(b). **Exhibit 4, ¶** 94.

81.    The order makes no mention of the fact that, weeks before the Democratic Party had obtained the 500 withdrawal requests in late May, voters had been marking and returning Green Party ballots sent to them by the State.

82.    The order does not explain what legal authority the state court had to disenfranchise the nearly 800 Montana voters that had lawfully cast Green Party ballots well before the Democratic Party had bothered to file its lawsuit on June 1, 2020.

83.    Indeed, the order makes no mention of Green Party voters at all.

84.    The order does not cite any Montana statute authorizing the withdrawal of signatures from a party-qualification petition, let alone one authorizing withdrawal *after* voters had begun casting ballots for the party.

85.    The order contains no assertions about the Green Party petition itself being defective or containing misleading wording.

86.     The order contains no assertions about any of the petition signers being

unregistered to vote or any other assertions about the signers being unqualified to

sign the petition.

87.     Later in the day on August 7, 2020, Secretary Stapleton filed a notice of

appeal in the Montana Supreme Court. *Montana Democratic Party et al v. State of

Montana*, Case No. DA 20-0396.


## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Plaintiffs' Right to Due Process under the Fourteenth
Amendment to the United States Constitution
(42 U.S.C. 1983)**

88.     Plaintiffs reallege and incorporate by reference each allegation set forth

above.

89.     A denial of substantive due process occurs if an election is "conducted in a

manner that is fundamentally unfair." *Bennett v. Yoshina*, 140 F.3d 1218, 1226

(9th Cir. 1998).

90.     An election is fundamentally unfair and violates substantive due process if

two elements are present:

> (1) likely reliance by voters on an established election procedure
> and/or official pronouncements about what the procedure will be in
> the coming election; and

> (2) significant disenfranchisement that results from a change in the
> election procedures.

*Bennett*, 140 F.3d at 1226-27, citing *Griffin v. Burns*, 570 F.2d 1065, 1078-79 (1st Cir. 1978).

91.    The State of Montana mailed primary election ballots to Montana voters on May 8, 2020.

92.    These mailings included ballots for the four ballot-qualified political parties: Democratic, Republican, Libertarian, and Green.

93.    Plaintiff Tom Harsch and Plaintiff Teresa Harsch chose Green Party ballots, selected and marked their candidates on these ballots and, in accordance with Montana law, timely mailed the ballots in the return signature envelopes provided by the State.

94.    Montana law required the Harschs and all other voters who selected Green Party ballots to forgo casting ballots in other party primaries.

95.    In turn, the Harschs and all other Montana voters who selected Green Party ballots were entitled to rely upon the State to count their ballots.

96.    When they cast their ballots, the Harschs and other Green Party voters, as well as Green Party candidates such as Plaintiff Royal Davis and Plaintiff Gary Marbut, were entitled to rely upon the State "declar[ing] nominated ... the individual having the highest number of votes cast for each office." Mont. Code Ann. § 13-15-507.

97.     When they cast their ballots, the Harschs and other Green Party voters, as well as Green Party candidates such as Plaintiff Royal Davis and Plaintiff Gary Marbut, were entitled to rely upon the State to "certify to the election administrators the name and party or other designation of each candidate who filed with the Secretary of State and whose name is entitled to appear on the ballot" as well as rely upon the State to have "official ballots prepared" containing the names of candidates nominated in the primary election.  Mont. Code Ann. § 13-12-201.

98.     On August 7, 2020, nearly three months after the Harschs and other Montana voters lawfully cast Green Party ballots, and nearly five months after Secretary Stapleton declared the Green Party to be ballot-qualified, a state court ruled that the Secretary Stapleton is "enjoined from implementing or giving any effect to the [Green Party's] Petition."

99.     The purpose of casting a Green Party ballot in a primary election is to nominate Green Party candidates to appear on the general election ballot.

100.    If Secretary Stapleton is prevented from placing on the general election ballot the names of Green Party candidates duly nominated by the voters, the Green Party ballots cast by the Harschs and approximately 800 other Montana voters during the Montana primary election will become nullities and these voters will become disenfranchised.

16

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief from this

Court:

a) A declaration stating that Secretary of State Corey Stapleton is lawfully

required to place on the general election ballot the names of the Green Party

candidates nominated by Plaintiffs and other Green Party voters during Montana's

primary election;

b) An injunction prohibiting Secretary of State Corey Stapleton and all

persons acting under his authority from omitting from the general election ballot

those Green Party candidates nominated by Plaintiffs and other Green Party voters

during Montana's primary election;

c) An award to Plaintiffs of costs of litigation, including attorneys' fees and

expenses pursuant to 42 U.S.C. § 1988; and

d) Any other relief to which Plaintiffs may be entitled or as this Court deems

necessary and proper.


DATED: August 11, 2020          Respectfully submitted,

                                /s/ Matthew G. Monforton
                                Matthew G. Monforton
                                Attorney for Plaintiffs

## VERIFICATION BY GARY MARBUT

I, Gary Marbut, declare as follows:

1. I am a Plaintiff in this action.

2. I have reviewed the attached Complaint and declare that the facts and allegations contained therein are true, except so far as they are stated to be on information, and that, so far as they are stated to be on information, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the statements contained in this Verification are true and correct.

Executed on August ___, 2020, in _Missoula County,_ Montana.

Gary Marbut
Declarant

I, Royal Aubrey Davis, declare as follows:

1. I am a Plaintiff in this action.

2. I have reviewed the attached Complaint and declare that the facts and allegations contained therein are true, except so far as they are stated to be on information, and that, so far as they are stated to be on information, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the statements contained in this Verification are true and correct.

Executed on August 10, 2020, in Helena, Montana.

Royal Aubrey Davis
Declarant

# VERIFICATION BY TOM HARSCH

I, Tom Harsch, declare as follows:

    1. I am a Plaintiff in this action.

    2. I have reviewed the attached Complaint and declare that the facts and allegations contained therein are true, except so far as they are stated to be on information, and that, so far as they are stated to be on information, I believe them to be true.

    I declare under penalty of perjury under the laws of the United States of America that the statements contained in this Verification are true and correct.

Executed on August \_\_\_\_, 2020, in _____ Montana.

Tom Harsch
Declarant

20

## VERIFICATION BY TERESA HARSCH

I, Teresa Harsch, declare as follows:

    1. I am a Plaintiff in this action.

    2. I have reviewed the attached Complaint and declare that the facts and allegations contained therein are true, except so far as they are stated to be on information, and that, so far as they are stated to be on information, I believe them to be true.

    I declare under penalty of perjury under the laws of the United States of America that the statements contained in this Verification are true and correct.

Executed on August __10__, 2020, in __Billings__, Montana.

Teresa Harsch
Declarant